**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **RONALD HILLS** | : | **No. 08-654** |

## MEMORANDUM

PRATTER, J.                                                         FEBRUARY 16, 2021

Ronald Hills seeks immediate release from incarceration by moving for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Hills requests relief based on the First Step Act of 2018, the COVID-19 pandemic, and medical conditions that he believes place him at increased risk of harm from the virus.  The Government opposes Mr. Hills's motion, given the danger he presents to the community.  For the reasons that follow, the Court denies the motion.

### BACKGROUND

**I.     Mr. Hills's Criminal Conduct**

In 2009, a grand jury returned a five-count superseding indictment, charging Mr. Hills with armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count One); possession of a firearm in furtherance of the bank robbery, in violation of 18 U.S.C. § 924(c) (Count Two); possession of more than five grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Three); possession of a firearm in furtherance of that drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 992(g) (Count Five).

Counts One and Two arose out of an armed bank robbery.  Mr. Hills preyed on an elderly couple who withdrew cash from the bank.  He threatened to shoot them before fleeing the scene.

1

The subsequent search for Mr. Hills led police to his wife's home where they recovered a gun owned by Mr. Hills, drug paraphernalia, and a plate with white residue. Mr. Hills's wife admitted to police during the search that his stash of crack cocaine was hidden in the house. Police recovered 12 grams of crack cocaine. Mr. Hills was then charged with Counts Three, Four, and Five.

The five counts were severed into two separate trials. Mr. Hills was first tried for the bank robbery and related gun charge. The jury convicted him of both charges. He was then tried for the drug trafficking and related gun charges. The second jury also convicted him of all charges. Following the trials, the Court imposed a sentence of 444 months. The term of imprisonment represents concurrent terms of 60 months for Counts One, Three, and Five, a mandatory minimum of 84 months on Count Two, and 300 months on Count Four, running consecutively with the other terms.

Mr. Hills timely appealed. The Third Circuit Court of Appeals affirmed his conviction, *United States v. Hills*, 488 F. App'x 569 (3d Cir. 2012) and sentence, *United States v. Hills*, 548 F. App'x 772 (3d Cir. 2013).[1]

## II.    Mr. Hills's Request for Compassionate Release and Medical Records

In August 2020, Mr. Hills requested compassionate release from the warden of the facility where he is living. The warden did not respond within the statutory 30-day period. In November, Mr. Hills filed his *pro se* motion for compassionate release with this Court.

---

[1]    Between the sentencing hearing and his appeal, the Government revised its interpretation of the Fair Sentencing Act, which reduced the sentencing disparity between offenses for crack and powder cocaine. On his first appeal, the Government requested that the Fair Sentencing Act be applied. The Third Circuit Court of Appeals affirmed the judgment of conviction but remanded to consider the sentence under the Act. *United States v. Hills*, 488 F. App'x 569 (3d Cir. 2012). The Court held a resentencing hearing, addressed the statutory sentencing factors under § 3553(a) as applied to Mr. Hills, and imposed the same sentence. Although Mr. Hills again appealed his sentence, the appellate court rejected his argument.

Mr. Hills's medical records for the past two years reveal that he is morbidly obese, and has been diagnosed with type 2 diabetes, hypertension, hyperlipidemia, seborrhea, and glaucoma. He receives medications for these conditions provided by the Bureau of Prisons ("BOP") where he is confined and is routinely evaluated by medical personnel there. He is otherwise reportedly fully ambulatory and engages in all normal activities of daily living within the prison, including maintaining employment through UNICOR at the facility.

Mr. Hills moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. In support of his motion, Mr. Hills relies on non-retroactive provisions of the First Step Act which clarified that § 924(c) sentences can now only be "stacked" if the second offense occurs after a final conviction on the first offense. Prior to the Act's enactment, the Federal Sentencing Guidelines required that mandatory minimum sentences for § 924(c) offenses be served consecutively and imposed a mandatory minimum term of 25 years for each subsequent § 924(c) conviction.

### III.   BOP's Response to the COVID-19 Pandemic

BOP's "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[2] and it has taken significant measures to protect the health of the inmates in its charge. These measures, among other things, include severely curtailing visitation, limiting the movement of inmates, paying special attention to social distancing, and screening and isolating new inmates. As directed by the Attorney General, BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[3] Pursuant to the Coronavirus

---

[2]   BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Feb. 16, 2021).

[3]   This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement.

Aid, Relief, and Economic Security (CARES) Act, BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that have seen the greatest incidence of COVID-19 transmission thus far.

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices accordingly to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

The Court acknowledges that the COVID-19 pandemic is a serious and fluid situation and in no way minimizes the critical health risk it poses. BOP's efforts at Forrest City Medium, where Mr. Hills is currently serving his sentence, have had some success. As of February 16, 2021, only one inmate and 33 staff members are currently COVID-positive. Overall, at this facility, 360 inmates and five staff members were previously positive for COVID-19.[4] Forrest City Medium isolates any inmate who tests positive while they are treated and recovering. And the BOP website continues to provide transparent information with the community about positive cases and recoveries.

### LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d

---

[4]      The data is current as of February 16, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.

4

Cir. 2007). A defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf, which can only occur after the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[5] a court may reduce the term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with the Sentencing Commission's applicable policy statements[6] but only after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides some guidance for defining the term. The application note provides, in pertinent part,

---

[5]     Mr. Hills's request to the warden went unanswered for the requisite 30-day period. He then filed this motion *pro se*, although he has since secured representation to file a reply brief on his behalf. The Government does not raise an exhaustion argument here.

[6]     Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," the Court recently concluded that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

        Moreover, there is a growing consensus among the circuit courts that the policy statement does not limit the Court's discretion to consider compassionate release under the First Step Act. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at \*2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899) (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)).

**DISCUSSION**

Mr. Hills argues that he should be immediately released under 18 U.S.C. § 3582(c)(1)(A)(i) given his morbid obesity, type 2 diabetes, and subsequent changes in sentencing laws. First, without a doubt, all segments of our society have been experiencing the unprecedented magnitude of the COVID-19 pandemic. The Government does not contest that Mr. Hills's chronic health conditions, in light of the ongoing pandemic, can be an extraordinary and compelling reason that warrants release. The Court does not minimize the critical health risk posed by COVID-19 and finds that his physical conditions are problematic.

Second, Mr. Hills asserts that immediate release is warranted based on his post-sentence rehabilitation and the recent sentencing reforms in the First Step Act. Given Mr. Hills's problematic medical conditions, the Court must consider whether his circumstances are indeed extraordinary and compelling to warrant immediate release. Although the Government concedes,

6

and this Court acknowledges that it may consider subsequent reforms to the sentencing laws, the Court declines to grant the relief requested here.

As an initial matter, Section 403 of the First Step Act does not apply retroactively. Indeed, Congress was unequivocal in its intent that Section 403's amendments do not apply to defendants who were sentenced prior to the Act's enactment. *See* First Step Act § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for that offense has not been imposed as of such date of enactment.")." Because Mr. Hills's sentence was affirmed in 2013—more than five years prior to enactment of the First Step Act—the Act does not apply here. *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020); *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *2 (E.D. Pa. July 24, 2020).

So, the question before the Court is the impact of Congress's pronouncement that § 403(b) not apply retroactively on a pending motion for compassionate release. One district court within this Circuit has noted that courts are presently divided on whether to consider the amendment to § 924(c) to already-imposed sentences. *United States v. Harris*, No. CR 97-399-1, 2020 WL 7861325, at *8 (E.D. Pa. Dec. 31, 2020). There is some consensus among district courts that, although the stacking of sentences under § 924(c) does not alone constitute an extraordinary and compelling reason for release, it can be considered in light of other factors pertinent to the particular defendant. *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *5 (D.N.J. Oct. 14, 2020) (collecting cases).

At the time Mr. Hills was sentenced, § 924(c) included a "stacking" provision which required mandatory consecutive 25-year sentences for each conviction in which a defendant used a firearm during the commission of a crime. The "stacking" sentence applied even when both

7

convictions arose from the same indictment, as was the case in the superseding indictment against Mr. Hills. This is why Mr. Hills was sentenced to a seven-year mandatory term on Count Two to be followed by a second 25-year term for Count Four.

Were Mr. Hills sentenced post-passage of the First Step Act, he would still have been sentenced to a seven-year term on the first § 924(c) charge to be followed by a five-year term on the second. This amounts to a minimum sentence of 12 years plus whatever guideline term the Court determined appropriate on the other three counts, including armed robbery and possession with intent to distribute. So, even with the benefit of a new-sentencing regime, Mr. Hills would still have time remaining on his sentence. Even were the Court to consider the impact of a reduced sentencing framework in the First Step Act, it is not an extraordinary and compelling reason for a sentence reduction here when Mr. Hills has yet to serve the term that would be imposed by the reforms. *See, e.g.*, *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *7 (D.N.J. Oct. 14, 2020) (declining motion for immediate release when defendant would now be sentenced to 27 years under First Step Act, but had served 20 years).

Regardless of whether extraordinary and compelling reasons exist, resolving Mr. Hills's motion still calls upon the Court to take into serious consideration the limits imposed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The First Step Act did not remove such considerations. The extraordinary relief that he requests will be denied even though Mr. Hills's medical conditions put him at increased risk. Consideration of the § 3553(a) factors compel this result.

One such factor that the Court may consider is the disparity in sentencing pre- and post-elimination of the mandatory stacking charge. Were the Court to release Mr. Hills after serving 12 years under the new sentencing framework, it would effectively wipe away the remaining three charges for armed robbery and possession with intent to distribute a controlled substance. The

§ 3553(a) factors weigh against such a sentencing reduction. Mr. Hills preyed on the weakest and most vulnerable in our society. He threatened to shoot an elderly couple in order to steal from them. It is fortunate that his victims were not injured but the Court cannot ignore the violence of Mr. Hills's conduct. And, in addition to armed robbery, Mr. Hills trafficked drugs to other vulnerable targets. These serious offenses warranted a severe sentence to provide adequate deterrence, reflect the nature of the crimes, and protect the public.

The harm that Mr. Hills points to is continued imprisonment pursuant to a lawfully imposed sentence. But there is no evidence that, at the time of sentencing, Mr. Hills received a sentence that did not comport with the then-applicable Federal Sentencing Guidelines.

Last, Mr. Hills references his efforts at rehabilitation while incarcerated. As noted above, although Congress has never defined "extraordinary and compelling" reasons, it has explicitly stated that "rehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Mr. Hills points to his continued employment in the UNICOR program and submitted a favorable performance evaluation from his supervisor there and a list of educational programming achievements. The Court absolutely commends these efforts. Given Mr. Hills's admitted substance abuse, Doc. No. 292 at 26, the Court applauds his successful completion of the drug treatment program and that he has sought out mental health counseling. But the Court cannot ignore that, while incarcerated, Mr. Hills has amassed a series of disciplinary infractions, including one for fighting with another inmate and possessing a dangerous weapon.

Mr. Hills may present a reduced risk of recidivism today than at sentencing. But, given the gravity of his offenses and that he would have years remaining on his sentence under the current guidelines for § 924(c), the Court declines to immediately release him now.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Hills's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

10